RECEIVED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

2012 APR 23   AM 10: 26

JAMES W. McCORMACK, CLERK

BY:

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 23 2012

By: JAMES W. McCORMACK, CLERK

DEP CLERK

# SUPREME COURT OF ARKANSAS

No. 11-732

COREY MCMILLAN, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED PERSONS,
                                    PETITIONER,

VS.

LIVE NATION ENTERTAINMENT, INC., AND TICKETMASTER, L.L.C. D/B/A TICKETMASTER,
                                    RESPONDENTS,

Opinion Delivered April 19, 2012

CERTIFIED QUESTION FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF ARKANSAS, NO. 4:11CV0332-JMM,

HON. JAMES M. MOODY, JUDGE

QUESTION ANSWERED.

---

### KAREN R. BAKER, Associate Justice

This case involves a question of Arkansas law certified to this court by the United States District Court for the Eastern District of Arkansas in accordance with our Supreme Court Rule 6-8 (2011), and accepted by this court on July 27, 2011. *See McMillan v. Live Nation Entertainment, Inc.*, 2011 Ark. 302 (per curiam). The certified question is as follows:

> Whether Arkansas Code Annotated section 5-63-201 is applicable to an exclusive agent of a public facility who sells music entertainment tickets that include in the price of the ticket additional fees, resulting in the price of the ticket being more than the face value and advertised price of the ticket?

We conclude that the answer is yes, section 5-63-201 applies to an exclusive agent who sells tickets that include in the price of the ticket additional fees.

Corey McMillan, individually and on behalf of a purported class, filed a complaint against Live Nation Entertainment, Inc., and Ticketmaster, L.L.C. d/b/a Ticketmaster

(collectively Ticketmaster) alleging that Ticketmaster charged fees in excess of the printed ticket price to musical or entertainment events in Arkansas. McMillan contended that in order to attend a musical event at Verizon Arena (Verizon) he was required to buy his four tickets from Ticketmaster, which charged him $220.60, although the face amount of each ticket was $42.75. Each ticket ultimately cost $55.15, and the charges in addition to the face amount of each ticket were designated as a $2.00 per ticket facility charge, a $9.40 per ticket convenience charge, and a $4.00 processing fee for the entire order. McMillan asserted that the additional charges violate Arkansas Code Annotated section 5-63-201(a)(1)(B) (Repl. 2005), which makes it unlawful for any person, corporation, firm, or partnership to sell or offer for sale any ticket to "[a]ny music entertainment event at a greater price than that printed on the ticket or the box office sale price plus any reasonable charge for handling or credit card use, whichever is greater." McMillan alleged that selling tickets at prices greater then the face value of the tickets is deceptive, unfair, and unconscionable and violates the Arkansas Deceptive Trade Practices Act, codified at Arkansas Code Annotated section 4-88-101 et seq. (ADTPA). McMillan also stated a claim for unjust enrichment.

Ticketmaster filed a motion to dismiss alleging that its sales were first-party ticket sales and that section 5-63-201 is not applicable to first-party ticket sales. Ticketmaster argued that because the fees it charged were permissible, it had not violated section 5-63-201, and the complaint failed to state a claim for violation of the ADTPA or unjust enrichment. McMillan filed a response, stating that because the fees charged by Ticketmaster were unlawful under section 5-63-201, such conduct violated the ADTPA.

As a threshold matter, we note that the certification order states that the federal district court, on its own, seeks review of the question before this court. This is significant as the question posed by the federal court is distinct—though clearly intertwined—from the issues presented in the complaint and the motion to dismiss. Thus, we offer no opinion on whether the additional fees or charges by Ticketmaster violate section 5-63-201 or whether a violation of section 5-63-201 constitutes an unfair trade practice under the ADTPA.[1] Our inquiry is limited solely to the certified question.

Arkansas Code Annotated section 5-63-201 (Repl. 2005) is entitled "Tickets to school athletic events or music entertainment events—Sale in excess of regular price" and provides as follows:

(a)(1) It is unlawful for any person, corporation, firm, or partnership to sell or offer for sale any ticket to:

(A) A high school or college athletic event or to an athletic or other event held for the benefit of charity at a greater price than that printed on the ticket; or

(B) Any music entertainment event at a greater price than that printed on the ticket or the box office sale price plus any reasonable charge for handling or credit card use, whichever is the greater.

(2) This subsection shall not apply to an institution of higher education that receives funds per ticket above the face value of that ticket.

(b)(1) Any person, corporation, firm, or partnership violating any provision of this section is guilty of a violation and upon conviction shall be fined in any sum not less than twenty-five dollars ($25.00) nor more than five hundred dollars ($500).

------------------------------------------------

[1] Both dissents focus on whether Ticketmaster is guilty of scalping under the facts alleged in the complaint and the motion to dismiss. While we have the authority under Arkansas Supreme Court Rule 6-8(c)(1) to reformulate the certified question, we have not broadened the question to encompass such an analysis.

(2) Every sale or offer for sale is a separate offense.

McMillan argues that the statute is unambiguous and applies to Ticketmaster because it is a corporation selling tickets at a price greater than that printed on the ticket or the box office price. Ticketmaster agrees that the statute is unambiguous, but asserts that the statute does not apply to it because the "price printed on the ticket or box office price" refers to the price that the venue charges for tickets, whether it sells the tickets itself or engages an agent such as Ticketmaster to sell the tickets for it. Ticketmaster adds that whether a venue chooses to sell tickets in person, over a telephone, or over the Internet, the first-party sale by the venue—or its agent—sets the box office sale price for purposes of section 5-63-201.

The cardinal rule of statutory construction is to construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Central Ok. Pipeline, Inc. v. Hawk Field Servs., LLC*, 2012 Ark. 157, ___ S.W.3d ____. When the language of the statute is plain and unambiguous, and conveys a clear and definite meaning, there is no need to resort to rules of statutory interpretation. *Id.* In other words, when the language of the statute is not ambiguous, the analysis need not go further and we will not search for legislative intent; rather, the intent is gathered from the plain meaning of the language used. *Yamaha Motor Corp., U.S.A. v. Richard's Honda Yamaha*, 344 Ark. 44, 38 S.W.3d 356 (2001). Thus, an unambiguous statute presents no occasion to resort to other means of interpretation as "[i]t is not allowable to interpret what has no need of interpretation." *City of Little Rock v. Ark. Corp. Comm'n*, 209 Ark. 18, 21, 189 S.W.2d 382,

384 (1945).

Here, the language employed by the General Assembly is so plain and unambiguous that judicial construction is limited to what was said.[2] Section 5-63-201 makes it unlawful to sell any ticket at a greater price than that printed on the ticket or the box office sale price plus any reasonable charge for handling or credit card use, whichever is greater. Thus, the beginning point is the greater price of either what is printed on the actual ticket or what is charged by the box office. The only additional amount that can be charged is a reasonable charge for handling or credit card use. The statute is specifically applicable to any "person, corporation, firm, or partnership" and does not exclude exclusive ticket agents. Thus, it is applicable to exclusive agents of a public facility who sell music entertainment tickets that include in the price of the ticket additional fees, resulting in the price of the ticket being more than the face value and advertised price of the ticket, unless those fees are a reasonable charge for handling or credit card use.

Ticketmaster argues that as the exclusive and authorized agent of Verizon it is

---

[2]Both dissents argue that section 5-63-201 is ambiguous because it can be reasonably construed to support the interpretation of Ticketmaster and the interpretation of McMillan. We disagree. Ticketmaster's interpretation hinges on the statute only applying to the resale of tickets. This construction is unreasonable because the plain language of the statute does not limit it to the resale of tickets. This court "will not add words [to a statute] to convey a meaning that is not there." *Kildow v. Baldwin Piano & Organ*, 333 Ark. 335, 339, 969 S.W.2d 190, 192 (1998). Adding words to a statute that is not ambiguous disregards the legislature's intent. *Id.*

Both dissents also argue that legislative intent can be found in the title to section 5-63-201. However, titles and descriptive headings used in the Arkansas Code do not constitute part of the law and shall in no manner limit or expand the construction of any section. Ark. Code Ann. § 1-2-115(b) (Repl. 2008); *see also R. N. v. J. M.*, 347 Ark. 203, 61 S.W.3d 149 (2001).

empowered to do anything that Verizon can do, which means that it essentially becomes the box office and the price at which it sells its tickets constitutes the box office sales price. Contrary to Ticketmaster's assertion, the "box office sale price" clearly means the price a ticket is sold for at the box office. The plain and ordinary meaning of "box office" is a booth, as in a theater or stadium, where tickets are sold. *See Merriam-Webster's Collegiate Dictionary* 148 (11th ed. 2003). While technology has certainly changed since the passage of the statute in 1993, tickets to entertainment events could always be sold at locations other than the box office through exclusive agents. Such transactions do not transform the place of such sales into the "box office."

Additionally, when a statute is unambiguous, the rules of statutory construction do not permit us to read into it words that are not there. *Scoggins v. Medlock*, 2011 Ark. 194, ____ S.W.3d ____. The legislature made an exception for institutions of higher education in section 5-63-201(a)(2), but it did not exclude exclusive ticket agents, and we will not by judicial fiat amend the statute to address concerns that are properly the province of the General Assembly. It is the function of the General Assembly to offer remedial legislation to address perceived statutory inadequacies. *See Oldham v. Morgan*, 372 Ark. 159, 271 S.W.3d 507 (2008) (acknowledging that this court leaves the task of rewriting statutes to the General Assembly).

Because Arkansas Code Annotated section 5-63-201 by its plain and unambiguous language applies to a person, corporation, firm, or partnership and does not exclude exclusive ticket agents, we answer the certified question in the affirmative.

Certified question answered.

HANNAH, C.J., BROWN AND GOODSON, JJ., dissent.